UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| In re ) | Case No. 08-42231-399 | |
| ) | | |
| KELLY MARCIDUS PHILLIPS, ) | | |
| ) | | |
| Debtor. ) | Chapter 7 | |
| ) | | |
| NANCY J. GARGULA, ) | | |
| United States Trustee, ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | Adv. No. 09-04115-399 | |
| ) | | |
| KELLY MARCIDUS PHILLIPS, ) | | |
| ) | | |
| Defendant. ) | | |

**MEMORANDUM OPINION**

The issue before this Court is whether debtor Kelly M. Phillips (the "Debtor") fraudulently obtained a discharge in her Chapter 7 bankruptcy case when she failed to disclose three administrative claims she had pending against her employer at the time she filed her bankruptcy petition. On October 26, 2009, this Court held a trial on the Complaint to Revoke Debtor's Discharge Under 11 U.S.C. § 727(d)(1) filed by Nancy J. Gargula, the United States Trustee (the "U.S. Trustee"). The Debtor and the U.S. Trustee were represented by counsel. Based on the record and arguments made at trial, this Court makes the following findings of fact and conclusions of law.

**BACKGROUND**

On March 31, 2008, the Debtor filed a voluntary petition for relief under Chapter 7 of title 11 of the United States Code (the "the Bankruptcy Code"). The Debtor's petition

-1-

was accompanied by her Schedules of Assets and Liabilities and her Statement of Financial Affairs, each of which Debtor signed under oath.  In response to item 21 on the Debtor's Schedule B, which prompted the Debtor to disclose, in pertinent part, "other contingent and unliquidated claims of every nature," Debtor responded, "None."  Under Question 4(a) of Debtor's Statement of Financial Affairs, when prompted to list, in pertinent part, "all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case," Debtor again replied, "None."

Fredrich J. Cruse was appointed as the Chapter 7 trustee (the "Chapter 7 Trustee") for the Debtor's case.  At the Debtor's April 30, 2008 Bankruptcy Code Section 341 first meeting of creditors, the Chapter 7 Trustee explained to the Debtor the importance of full disclosure of her assets in bankruptcy and the possible consequences of failing to make full disclosure.  Also at the Debtor's Section 341 meeting, the Debtor confirmed, under oath, the accuracy of the information in her petition, Schedules and Statement of Financial Affairs.

Additionally, the Debtor submitted her sworn response to the Chapter 7 Trustee's Supplemental Information Sheet.  The Supplemental Information Sheet defines an asset as "anything that you own [including] claims you have against others."  In response to Question 3 of the Supplemental Information Sheet, which instructs Debtor to indicate whether "I have listed in my bankruptcy schedules everything I own," Debtor checked, "Yes."  In response to Question 26, which asks whether the Debtor "had "a lawsuit pending, . . . where [she was] suing someone else," Debtor checked "No."  Likewise,  in response to Question 27, which asks "Could you file a lawsuit ... against someone else

because you believe they are legally required to pay you money damages for any reason?" Debtor checked, "No."

On the basis of Debtor's representations at her Section 341 meeting, the Chapter 7 Trustee announced the abandonment of all assets of the estate back to Debtor at the close of the Section 341 meeting.  The Debtor received a discharge on July 1, 2008 and her case was closed shortly thereafter.

Unbeknownst to the Chapter 7 Trustee and the U.S. Trustee, at the time when the Debtor filed her petition, she was actively pursuing three Equal Employment Opportunity ("EEO") administrative claims against her employer, the United States Postal Service ("USPS").  The Chapter 7 Trustee and the U.S. Trustee did not learn about the Debtor's EEO claims until approximately May 11, 2009, when the USPS's counsel advised the Chapter 7 Trustee of their existence.

The Debtor had filed a formal EEO complaint against USPS, on August 28, 2006, requesting, among other things, monetary compensation.  At the time of Debtor's bankruptcy filing, the Debtor's 2006 claim was pending before the Equal Employment Opportunity Commission's ("EEOC") Office of Federal Operations.  On August 13, 2007, less than one year pre-petition, Debtor filed a second formal claim against USPS.  On March 12, 2008, just 19 days before she filed her Chapter 7 bankruptcy case, the Debtor commenced a third EEO proceeding by filing a pre-complaint with the EEOC which was followed by her formal complaint approximately one week post-petition, on April 8, 2008.  The 2007 and 2008 EEO proceedings were set for trial before an EEOC administrative judge, but, in response to a motion filed by the USPS's counsel, the trial was held in abeyance.  Like with her 2006 EEO action, the Debtor sought compensation

with respect to her 2007 and 2008 EEO claims.  The Debtor obtained the assistance of an EEO claim representative with her claims.

Before the USPS's counsel disclosed the existence of the Debtor's EEO claims to the Chapter 7 Trustee, the Debtor had not mentioned them to her bankruptcy attorney.  She waffled in her responses to inquiries about whether she told her EEO representative about her bankruptcy filing.  The Debtor's EEO representative testified that he did not discuss with the Debtor the interplay between the Debtor's EEO claims and a bankruptcy case. Further, the USPS's counsel discovered the existence of the Debtor's bankruptcy case on her own without any information or assistance from the Debtor. Likewise, the administrative law judge assigned to the Debtor's 2007 and 2008 claims learned of the Debtor's bankruptcy from the USPS's counsel, not the Debtor.

Following the Chapter 7 Trustee's receipt of information about the Debtor's undisclosed EEO claims, and in response to a motion filed by the Chapter 7 Trustee, this Court re-opened Debtor's case on May 29, 2009.  Thereafter, the U.S. Trustee filed a timely complaint to revoke Debtor's discharge under Bankruptcy Code Section 727(d)(1), based on the Debtor's fraud.

At a reconvened Section 341 meeting held shortly after her bankruptcy case was reopened, the Debtor testified that, because she was never specifically questioned about employment discrimination claims and because she did not know what the outcome of her EEO claims would be, she had not realized that she was expected to disclose them in her bankruptcy case.  However, the Debtor could not claim lack of familiarity with either the EEO or the bankruptcy processes.  She had filed pre-complaints in two earlier EEO matters against the USPS in 1999 and 2004, each of

-4-

which was resolved without litigation, and she was a debtor in two previous bankruptcy cases. Moreover, in response to the U.S. Trustee's question at the same Section 341 meeting about whether the Debtor anticipated receiving money damages upon winning one or more of her EEO complaints, the Debtor responded, in part, that "clearly there should be some type of compensation" to her.

Likewise, at a deposition taken by the USPS's counsel in the Debtor's 2007 and 2008 EEO actions, the Debtor responded to a question about the remedy she sought in the cases by saying "I would like to get compensated for the stress and duress that I've gone through." In the pre-complaint counseling form filed by the Debtor for one of her EEO claims, she indicated that she wanted to be "compensated for the mental anguis[h] the lost in pay." Most importantly, the Debtor admitted at trial that she deliberately requested compensation in each of the EEO proceedings to preserve her right to a monetary award.

## DISCUSSION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§1334(b), 157(b)(2)(J) and Local Rule 9.01(B) of the United States District Court for the Eastern District of Missouri. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(J).

The U.S. Trustee has meet her burden of proving that the Debtor's discharge should be revoked. *See Fokkena v. Peterson (In re Peterson)*, 356 B.R. 468, 475 (Bankr. N.D. Iowa 2006)(requiring proof by a preponderance of the evidence). Section 727(d)(1) of the Bankruptcy Code sets forth grounds for revocation of a debtor's discharge. It states, in pertinent part, that:

>(d) [o]n request of the United States trustee . . ., the court shall revoke a discharge . . . if -
>
>(1) such discharge was obtained through fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge.
>
>11 U.S.C. §727(d)(1).

To revoke the discharge under section 727(d)(1), the U.S. Trustee must show that the discharge would have been denied if the fraud had been known at the time when the discharge entered. *O'Neil v. DePriest (In re DePriest)*, 414 B.R. 518, 521 (Bankr. W.D. Mo. 2009)(citation omitted).[1]

This Court would have denied the Debtor her discharge in 2008 if it had known about her failure to disclose her 2006, 2007 and 2008 EEO claims in her Schedules of Assets and Liabilities, Statement of Financial Affairs, Chapter 7 Trustee's Supplemental Information Sheet and at her Section 341 meeting. Bankruptcy Code Section 727(a)(4) provides that a court shall deny a debtor a discharge if "the debtor knowingly and fraudulently, in or in connection with the case ... made a false oath or account." 11 U.S.C. §727(a)(4). The false oath or account must be material and made with intent. *Korte v. Internal Revenue Serv. (In re Korte)*, 262 B.R. 464, 474 (B.A.P. 8th Cir. 2001). The phrase "false oath or account" includes statements made in a debtor's schedules or statement of financial affairs and representations by a debtor at his Section 341 meeting. *See Jordan v. Bren (In re Bren)*, 303 B.R. 610, 613 (B.A.P. 8th Cir. 2004)(overruled on other grounds).

---

[1] Courts have interpreted this section as creating a two part test requiring the plaintiff to prove that: (1) the debtor obtained the discharge through fraud; and (2) the plaintiff was unaware of the fraud before the discharge entered. *See, e.g., DePriest*, 414 B.R. at 521. This dispute does not concern whether the U.S. Trustee was aware of the fraud prior to entry of the Debtor's discharge.

-6-

A matter will be considered material "if it bears a relationship to the [debtor's] business transactions or estate, or concerns the discovery of assets, business dealings or the existence and disposition of his property." *In re Chalik*, 748 F.2d 616, 618 (11th Cir. 1984)(per curiam); *quoted in Mertz v. Rott*, 955 F.2d 596 (8th Cir 1992) and *Palatine Nat'l Bank of Palatine v. Olson (In re Olson)*, 916 F.2d 481, 484 (8th Cir. 1992). Because the Debtor's omission of the EEO claims from her schedules relates to the "discovery of assets" and the "existence of property" it is material. It is irrelevant that the Debtor wasn't sure of the value of her EEO claims. *See Olson*, 916 F.2d at 484.

A debtor's knowledge and intent can be shown through circumstantial evidence, or from inferences from a course of conduct. *Korte*, 262 B.R. at 474. In addition, statements made with a reckless indifference to the truth are considered to be intentionally false. *Id.* An assessment of the debtor's credibility is important to a determination concerning fraudulent intent. *Dean v. McDow (In re Dean)*, 299 B.R. 133, 140 (E.D. Va. 2003)(citation omitted).

This Court concludes that the Debtor made false oaths fraudulently. The Debtor has been anything but honest, attentive and forthcoming. Notwithstanding the fact that her testimony at her continued 341 meeting and at trial, as well as her statements made during the litigation of her 2007 and 2008 EEO claims, show that she pursued monetary relief in the EEO actions, she still tried to maintain that she was "out to get justice", instead of money. She claimed further that she didn't mean to withhold disclosure of any information or assets in her bankruptcy case. The Debtor can hardly play the part of an innocent, yet uninformed, party. After having already been involved with the EEO

-7-

claims process since1999 and 2004 and having worked with an EEO claims representative pre-petition, she understood the way in which pursuit of monetary compensation on EEO claims works.[2] Also, given the fact that this was the Debtor's third bankruptcy filing, it is hard to imagine how she could lack an understanding of the importance of careful and full disclosure in bankruptcy.[3] The disingenuous nature of the Debtor's actions is further evidenced by her disclosure of different information to the USPS's counsel and the administrative body in her 2007 and 2008 EEO actions and to her bankruptcy counsel, depending on which facts best suited her. In fact, it is unclear whether the Debtor mentioned her bankruptcy filing to her own EEO representative.

"The proper functioning of the entire bankruptcy process is dependent upon debtors providing complete, accurate and reliable information in the petition and other documents submitted with the filing of the case so that parties in interest may evaluate the debtor's assets and liabilities and appropriately administer the case. " *Bren*, 303 B.R. at 613. A trustee or creditor should not be charged with conducting independent examinations and digging out the facts. *Mertz*, 955 F.2d at 598 (*citing In re Mascolo*, 505 F.2d 274, 278 (1st Cir.1974) ("The successful functioning of the bankruptcy act hinges both upon the bankrupt's veracity and his willingness to make a full disclosure")).

---

[2] The Debtor tried to feign ignorance of the EEO claim process by explaining that her 1999 and 2004 claims were resolved without monetary compensation. It is irrelevant to our determination whether the resolution of the Debtor's 1999 and 2004 claims was achieved through the grant of non-monetary relief.

[3] At the Debtor's initial Section 341 meeting, the Chapter 7 Trustee explained the importance of a debtor's full disclosure of her assets in bankruptcy and the possible consequences of failing to make full disclosure.

For the foregoing reasons, I find that the U.S. Trustee met her burden under Bankruptcy Code Section 727(d)(1).

DATED: November 19, 2009
St. Louis, Missouri

Barry S. Schermer
Chief United States Bankruptcy Judge

Copy Mailed to:

Kelly Marcidus Phillips
5415 Delcastle
Florissant, MO 63034
DEBTOR/DEFENDANT

Herman L. Jimerson
Jimerson Law Firm, P.C.
225 S. Meramec, Ste. 508
Clayton, MO 63105
ATTORNEY FOR DEBTOR/DEFENDANT

Fredrich J. Cruse
The Cruse Law Firm PC
PO Box 914
Hannibal, MO 63401
CHAPTER 7 TRUSTEE

Office of U.S. Trustee
111 South Tenth Street
Suite 6353
St. Louis, MO 63102

ALL CREDITORS AND PARTIES IN INTEREST LISTED ON THE MAILING MATRIX.